[No. B160121. Second Dist., Div. Four. Apr. 29, 2003.]

THE PEOPLE, Plaintiff and Appellant, v.
SARINA LENEE MUHAMMAD, Defendant;
ANA MARIA LOPEZ, Appellant.

**COUNSEL**

Steve Cooley, District Attorney, George M. Palmer, Head Deputy District Attorney, Patrick Moran and Brentford J. Ferreira, Deputy District Attorneys, for Plaintiff and Appellants.

Michael P. Judge, Public Defender (Los Angeles) and Albert J. Menaster, Deputy Public Defender as Amici Curiae on behalf of Plaintiff and Appellant The People.

Benton, Orr, Duval & Buckingham, Brenda L. McCormick and Kevin M. McCormick as Amici Curiae for the Superior Court of Los Angeles County.

## OPINION

**EPSTEIN, J.**— It is a general rule that, outside of a contempt proceeding, trial courts lack inherent power to impose a monetary sanction against an attorney for misconduct in court. The authority to impose such a sanction must be found in a statute. This has been the declared law in California for at least the past 25 years. (See *Bauguess v. Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942].) We apply it here in the context of a monetary fine levied against a prosecutor for exercising jury peremptory challenges in violation of the constitutional principles laid down in *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748], and other cases.

In this case, the court found that the prosecutor had improperly exercised peremptory challenges, leading to a mistrial and dismissal of the venire panel. Acting under Code of Civil Procedure section 177.5, the court assessed a $1,500 sanction against her. (All statutory references are to the Code of Civil Procedure unless otherwise stated.) The People and the prosecutor seek appellate review of the finding and the order. We find sufficient support in the record for the finding. But it is a requisite to application of the statute that a court order be violated, and we find no such court order in this case. Since the statute does not apply and the trial court lacks inherent power to impose the fine, the order imposing it must be reversed.

### PROCEDURAL AND FACTUAL SUMMARY

The defendant was charged with murder. The present appeal arises out of her third trial, the first two having ended in mistrial due to the jury's inability to reach a verdict.

Following the court's voir dire of prospective jurors, the court discussed attorney voir dire at sidebar. The court made it clear that it would only allow questions going to a challenge for cause. On that basis, it rejected defense counsel's request to ask prospective jurors how they would evaluate testimony, although the court indicated that it would allow questions as to whether they would apply the same standard to all witnesses. The prosecutor said she wanted to ask questions about employment, but acknowledged "that's not generally cause." The court agreed that it was not, and the

prosecutor said she had no questions related to cause. The trial court admonished both sides to keep their voir dire tight.

The attorneys then proceeded to exercise peremptory challenges to prospective jurors and to briefly ask questions of prospective jurors seated in place of those who had been excused. When the prosecutor had excused nine prospective jurors, defense counsel presented a *Wheeler* challenge, arguing that the prosecutor had engaged in a "systematic exclusion" of prospective jurors based on ethnicity. Addressing the prosecutor, the court stated: "Indeed, . . . there's been a—what appears to be a systematic exclusion of minorities by you." The court recounted the challenges she had made. A White male was understandably excluded because he had indicated a dislike of lawyers. The balance was made up of two Asians; three African-Americans; one Hispanic; a female Caucasian; and one person whose ethnicity was difficult to categorize. The court concluded, "I think you have some explaining to do."

The court effectively having found a prima facie showing of prohibited group bias (see *People v. Turner* (1986) 42 Cal.3d 711, 719, fn. 3 [230 Cal.Rptr. 656, 726 P.2d 102] [trial court's inquiry, on complaint by defense counsel, implies finding of group discrimination, shifting burden of justification to prosecutor]), the prosecutor proceeded to explain her strikes. The Asians, she said, each had exhibited difficulty with the English language. The court agreed with respect to one of them ("I can accept that"). For several of the other ethnic minority prospective jurors, the explanation was that the trial would involve technical evidence, especially from the coroner, and, based on their occupations, the prosecutor did not believe the prospective jurors were up to understanding the case. One was "a janitor or a tailor," two others were "janitors" and one a custodian, which was the reason for excusing her. Another prospective juror, a Hispanic female, was a clerk with a public health agency, and the prosecutor could "only assume as a county employee she's much like our clerks, she's basically a filing individual. Based on that, again, I didn't believe she could comprehend the testimony." Still another dismissed prospective juror, a female African-American, was a customer service representative, "they're the individuals that you call when you want your phone company service . . . based on technical, but a background in whether or not they could comprehend the testimony, I just base it—based on a calculated assumption or guess as to what their level of comprehension's going to be."

The trial court found "a clear violation of the *Wheeler* statute. None of these reasons do I find a convincing reason for excusing them." The court asked defense counsel what he wanted to do. Counsel moved for a mistrial.

The court granted the motion. After dismissing the remaining members of the venire, the court addressed the prosecutor: "I find what you have done [is] not only illegal, but immoral and unethical, Ms. Lopez. What sanctions should I impose? My inclination is to impose sanctions in terms of monetary sanctions in the amount of $1,500 pursuant to section 177.5. My further inclination is to deny you the right to use peremptory challenges during jury selection tomorrow." The court responded to the prosecutor's statement that defense counsel had used all of his peremptories against White prospective jurors with the observation that it was defense counsel who laid the challenge, "and I listened to your reasons and your reasons were simply unacceptable, they're not credible reasons for excusing the people that you excused." The prosecutor asked the court to note that there were prospective jurors with "clearly English comprehension difficulties." The court agreed that was the case with respect to a couple of them, "but you're kicking off a perfectly capable confident and intelligent woman in your last peremptory, Juror No. 7, your peremptory No. 9 and some of the other reasons simply don't quash [*sic*: wash]. The technicalities of your case aren't so technical that these people couldn't listen to the case and I don't buy it."

The court issued an order to show cause why the prosecutor should not be sanctioned $1,500 under section 177.5 and, after further colloquy, set the hearing for the following day.

On that day the prosecutor was present together with another deputy district attorney, who appeared on her behalf. That deputy argued that section 177.5 does not apply to an advocacy situation such as jury selection, that there had been no warning from the trial court that the prosecutor's conduct might be sanctionable, nor had she violated a court order. Counsel also disputed whether a *Wheeler* violation had occurred at all. He concluded with a suggestion that the court treat the entire matter as a warning and proceed with the case. The trial court declined to do that, and ordered that the sanction stand in the amount of $1,500, which it stayed.

There was no fourth trial. On the following day, following appropriate waivers, the defendant entered a guilty plea to the amended charge of voluntary manslaughter and was sentenced to state prison. The People filed an appeal from the sanction order. The appeal shows the prosecutor both as appellant and "real party in interest." The People also sought our intervention by writ to overturn the sanction order. We denied the petition because the People had an adequate remedy at law through its pending appeal.

DISCUSSION

I

The appeal is authorized by section 904.1, subdivision (b), which permits an appeal after final judgment from a sanction order where the amount is less than $5,000.

Technically, the respondent in the case, if there is one, is the defendant, Sarina Lenee Muhammad. Having accepted a plea bargain and having been sentenced accordingly, she obviously has no interest in the present dispute, and has not made an appearance on appeal. We are in receipt of a "Respondent's Brief" filed on behalf of the superior court. Since the briefing did not raise an issue about the authority of the trial court to participate as a party in the appeal, we sent a Government Code section 68081 letter to counsel, inviting them to advise the court by letter brief of their position with respect to whether the superior court could appear, brief, and argue as "respondent" in the case and, if not, what procedure we should follow.

The superior court's letter in response argues that this is the unusual case in which the trial court itself has sufficient standing and interest to appear as a party on appeal. In their response, the People agree that the trial court is entitled to recognition as a party.

The superior court's letter cites a number of cases in which trial courts have appeared as a responding party in an appellate review of a sanction order. (The cited cases are *Kane v. Hurley* (1994) 30 Cal.App.4th 859 [35 Cal.Rptr.2d 809]; *People v. Tabb* (1991) 228 Cal.App.3d 1300 [279 Cal.Rptr. 480]; *Bergman v. Rifkind & Stirling, Inc.* (1991) 227 Cal.App.3d 1380 [278 Cal.Rptr. 583]; *Caldwell v. Samuels Jewelers* (1990) 222 Cal.App.3d 970 [272 Cal.Rptr. 126]; and *Seykora v. Superior Court* (1991) 232 Cal.App.3d 1075 [283 Cal.Rptr. 857].) The observation is correct, although none of these cases discussed the propriety of the trial court's participation. One (*Seykora*) was a writ proceeding, and in another (*Caldwell*), the opinion simply noted an argument of the county counsel "representing the trial court." (*Caldwell,* at p. 975, fn. 4.)

■ As a general rule, the role of a trial court is to decide cases, not to participate as a litigant in their resolution. The latter role is for the parties, not the court. (See discussion in *Municipal Court v. Superior Court (Gonzalez)* (1993) 5 Cal.4th 1126, 1131 [22 Cal.Rptr.2d 504, 857 P.2d 325].) Nevertheless, there are rare and limited situations in which the trial court itself may participate in the appellate process. (See discussion in *Ng. v.*

*Superior Court* (1997) 52 Cal.App.4th 1010, 1017 [61 Cal.Rptr.2d 49], disapproved in part in *Curle v. Superior* Court (2001) 24 Cal.4th 1057, 1069, fn. 6 [103 Cal.Rptr.2d 751, 16 P.3d 166] [disapproving anything in *Ng* in conflict with the Supreme Court's ruling on the issue of whether a judge, disqualified in § 170.3 proceedings, may participate as a party in an appellate review of the disqualification]; *James G. v. Superior Court* (2000) 80 Cal.App.4th 275, 278 [95 Cal.Rptr.2d 135]; and cases collected in Justice Kennard's dissent in *Gonzalez, supra*, 5 Cal.4th at p. 1137.) We note that even in these rare cases, the judge is not a proper party on appeal (*Curle v. Superior Court, supra*, 24 Cal.4th 1057), and that there is authority that the trial court may only defend itself in a writ proceeding, rather than initiate such a proceeding. (*James G. v. Superior Court, supra*, 80 Cal.App.4th at p. 279; *Curle,* at p. 1071 & fn. 7.)

These unusual exceptions typically occur when a question is presented involving important issues about the trial court's authority to control proceedings before it, which none of the litigating parties has an interest in pursuing. (See *Ng. v. Superior Court, supra*, 52 Cal.App.4th at p. 1018.)

That fits this case. As we have discussed, the defendant has no interest in whether the trial court was correct in imposing a monetary sanction against the prosecutor. And the County of Los Angeles, to which the sanction was payable, has not sought to intervene in any capacity. The trial court, as a court, has a legitimate interest in its authority to impose a monetary sanction against an attorney for courtroom misconduct. No one other than the court has any interest in defending the court's position.

Nevertheless, the trial court is not and cannot be a party in a direct appeal from a case it has tried. The few cases that have treated the question have allowed the court to participate in writ proceedings in which the court is named (albeit nominally in most cases) as the respondent. That is not our case, and we decline to convert this appeal into a writ proceeding at this point.

There is an alternative, suggested by the trial court in its letter responding to our request for briefing on this issue. It is that we treat the trial court's "Responding Brief" as a brief amicus curiae. The court's briefing has been helpful in our analysis of the issues, and we believe this to be a proper request. (See *Grant v. Superior Court* (2001) 90 Cal.App.4th 518, 523, fn. 2 [108 Cal.Rptr.2d 825], where this was done.) We shall proceed on that basis.

We granted the request of the Los Angeles County Public Defender to file a brief amicus curiae. It has done so, arguing that the sanction order should be reversed.

## II

■ The rule of the *Wheeler* case is that "the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community" under article I, section 6 of the California Constitution. (*People v. Wheeler, supra,* 22 Cal.3d at pp. 276-277.) The federal rule is the same, although based on the equal protection clause. (*Batson v. Kentucky* (1986) 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69]; *People v. Burgener* (2003) 29 Cal.4th 833, 863 [129 Cal.Rptr.2d 747, 62 P.3d 1].) These cases have been followed and applied by hundreds of others, and the rule they announce is among the best known principles of trial court procedure. ■ While peremptory challenges based on group bias are unconstitutional, challenges on virtually any other bona fide ground are permissible. "[T]he law recognizes that a peremptory challenge may be predicated on a broad spectrum of evidence suggestive of juror partiality. The evidence may range from the obviously serious to the apparently trivial, from the virtually certain to the highly speculative." (*People v. Wheeler, supra,* 22 Cal.3d at p. 275.)

■ If a party brings a *Wheeler* challenge, raising the issue of whether one or more jury peremptories by another side was exercised on the basis of group bias, and the trial court explicitly or implicitly finds that the challenging party has made a prima facie showing of that impropriety, the burden shifts to the other side to justify its strikes. It is then up to the trial judge to decide whether the reason offered is truth or pretext. "[S]uch a ruling 'requires trial judges to make difficult and often close judgments. They are in a good position to make such determinations, however, on the basis of their knowledge of local conditions and of local prosecutors.' [Citation.] They are also well situated to bring to bear on this question their powers of observation, their understanding of trial techniques, and their broad judicial experience. We are confident of their ability to distinguish a true case of group discrimination by peremptory challenges from a spurious claim interposed simply for purposes of harassment or delay." (*People v. Wheeler, supra,* 22 Cal.3d at p. 281.)

A few years after *Wheeler* was decided, the Supreme Court overturned a trial court ruling denying a *Wheeler* challenge, in part because it rejected the prosecutor's explanation that some challenges were based on the prospective juror's "body language" and mode of answering certain questions. (*People v. Trevino* (1985) 39 Cal.3d 667, 692 [217 Cal.Rptr. 652, 704 P.2d 719].) Justice Kaus filed an eloquent dissent. He noted his "own hunch that what is really behind the majority's rejection of hunches, gut-feelings and body language is a fear that prosecutors will insincerely attempt to justify group

bias with such reasons and that trial judges, some of whom are perceived as being unsympathetic toward the *Wheeler* rule, will rubber-stamp their explanations. I submit that if we cannot trust trial courts to do their job fairly, we might as well close up shop and that we, ourselves, were insincere when, in *Wheeler*, we professed our faith in the 'good judgment' of the trial bench." (*Trevino*, at p. 704, fn. 4 (dis. opn. of Kaus, J.).)

This passage from Justice Kaus's dissent was quoted with approval in *People v. Johnson* (1989) 47 Cal.3d 1194, 1219 [255 Cal.Rptr. 569, 767 P.2d 1047], which overruled *Trevino* as extending *Wheeler* beyond its logical limits. It guides our discussion here.

These decisions and others tell us that the trial court's judgment is entitled to considerable deference. This is especially true when the bench officer is an experienced trial judge. Thus, in *Johnson*, the court noted that when that case was tried, the judge had almost 10 years of judicial experience in supervising jury trials, and that "trial judges know the local prosecutors assigned to their courts and are in a better position than appellate courts to evaluate the credibility and the genuineness of reasons given for peremptory challenges." (*People v. Johnson, supra*, 47 Cal.3d at p. 1219, fn. 6.) We take judicial notice that, when this case was tried, the trial judge had over 17 years of trial experience, and 13 years of experience before that as a prosecutor. (See Bogen, Cal. Courts and Judges (2003 ed.) p. 440.)

The trial judge listened to the prosecutor's explanations for her peremptory challenges. He agreed that two of them were justified by her explanations. (The prospective juror who had demonstrated a dislike of attorneys, and one who had particular difficulty with the English language.) But he rejected her explanations that ethnic minority prospective jurors she challenged were not up to understanding the case to be tried. ■ As a general proposition, an honestly held belief that a prospective juror will be unable to understand the case is a legitimate basis for a peremptory challenge. And a prosecutor's peremptory challenges are presumed to be exercised in a constitutional manner. (*People v. Turner* (1994) 8 Cal.4th 137, 165 [32 Cal.Rptr.2d 762, 878 P.2d 521].) But the presumption is rebuttable; the trial judge implicitly found that it was rebutted in this case. A fair reading— indeed, the only reading—of his statements is that he found the explanations offered were intended to disguise the actual reason for peremptory challenges: group bias. As the judge put it, he did not "buy it."

Most of the reported cases involving *Wheeler* challenges involve trial court decisions crediting a prosecutor's explanation. "So long as the trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory

justifications offered, its conclusions are entitled to deference on appeal." (*People v. Burgener, supra*, 29 Cal.4th at p. 864; cf. *People v. Silva* (2001) 25 Cal.4th 345, 375, 386 [106 Cal.Rptr.2d 93, 21 P.3d 769] [when prosecutor's stated reasons, sustained by trial court, are unsupported or inherently implausible, trial court must do more than make "global finding" of sufficiency].) No less deference is due when the trial court finds the explanation to be pretext, as this judge emphatically did. Based on a reading of the transcript of the proceedings, we cannot say the trial judge called it wrong.

We therefore uphold the trial court's ruling that the prosecutor exercised jury peremptory challenges on the basis of group bias. Given that, and defense counsel's motion for a new trial, the court had no alternative but to dismiss the remaining venire and grant the motion for mistrial. (See *People v. Willis* (2002) 27 Cal.4th 811, 823 [118 Cal.Rptr.2d 301, 43 P.3d 130].) We also note that since the challenged prospective jurors already had been excused, the trial court did not have the option, recognized in *Willis*, of simply seating them notwithstanding the challenge.

Having been forced to declare a mistrial because of the unconstitutional conduct of the prosecutor, the trial court turned to the issue of monetary sanction. So do we.

### III

As we stated at the outset, it is a fundamental rule in this state that aside from a contempt proceeding, a monetary sanction can only be imposed against an attorney when authorized by a statute. In the leading case, *Bauguess v. Paine, supra*, 22 Cal.3d 626, the plaintiff's attorney improperly read jurors' notes written on copies of exhibits that had been given to them as an aid in following the trial. The trial judge felt obliged to declare a mistrial. He did so, and imposed a $700 fine on the offending attorney to compensate opposing counsel for wasted time in the aborted trial. The Supreme Court surveyed the law and policy considerations that bore on the issue, and gave a negative answer to the question whether, "absent statutory authority, a court may award attorney's fees as a sanction under its *supervisory* power." (22 Cal.3d. at p. 637; see also *Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc.* (1997) 60 Cal.App.4th 352, 371 [70 Cal.Rptr.2d 449] [former Cal. Rules of Court, rule 227 permitting monetary sanctions was invalid to the extent it allowed the penalty without statutory authorization].)

The trial court justified the monetary sanction in this case under section 177.5. That statute authorizes a sanction of up to $1,500, payable to

the county, "for any violation of a lawful court order by a person, done without good cause or substantial justification." The statute applies to criminal as well as civil cases. (*People v. Tabb, supra,* 228 Cal.App.3d at p. 1310.) It does not require that the offending act be "willful," but only that it be committed without good cause or substantial justification. (*Tabb,* at p. 1311; *Seykora v. Superior Court, supra,* 232 Cal.App.3d at p. 1081 [sanction properly imposed for disobedience to order that counsel remain in courtroom to complete certain business].)

The statute also requires that the order imposing sanctions "be in writing and shall recite in detail the conduct or circumstances justifying the order." (§ 177.5.) Although the trial judge orally described the conduct and circumstances justifying the order, there was no written order or statement of circumstances. On appeal, the trial court concedes this deficiency and asks that we remand the case so that it may be cured. In light of our conclusion that no court order was violated, a remand would serve no purpose.

The Public Defender of Los Angeles County, in his amicus curiae brief, reads the Supreme Court's recent *Willis* case to mean that monetary sanctions are strictly an alternative to a declaration of mistrial, and cannot be imposed if a mistrial is granted on account of the improper conduct of an attorney. In *Willis,* the court rejected the former rule that, when a *Wheeler* challenge is established, the trial court's only remedy is to declare a mistrial. The court pointed out that this often benefits the offending party, which may be attempting to provoke a mistrial in order to start again with a new venire. (*People v. Willis, supra,* 27 Cal.4th at p. 818.) The court recognized the "need for the availability of some discretionary remedy short of dismissal of the remaining jury venire." (*Ibid.*) It discussed "discretionary alternatives to mistrial and dismissal" (*id.* at p. 821) such as seating the improperly discharged jurors (provided the court has retained control over them), and imposition of monetary sanctions. (*Id.* at pp. 823, 824.) In *Willis* the trial court had warned the offending attorney (defense counsel) that it would "impose personal monetary sanctions under [section] 177.35" [*sic*: 177.5] should the conduct recur. (*Id.* at p. 815.) Later, when it did, the court imposed a $1,500 sanction against the offending attorney, but stayed the fine and lifted it following trial. (*Id.* at p. 816.) The Supreme Court expressed concern over the leniency: "Although the trial court may have had good reasons for ultimately deciding not to impose sanctions (the record is silent), in future cases courts should consider framing a more effective form of relief for *Wheeler* errors, including reseating improperly challenged jurors and imposing sanctions severe enough to guard against a repetition of the improper conduct." (*Id.* at p. 824.)

We find nothing in this discussion that prevents a trial court from imposing monetary sanctions against the attorney whose misconduct provokes a

mistrial. The argument that mistrial is sanction enough mistakes an essential basis of the *Willis* decision: that the offending attorney may be misusing the peremptory challenge privilege precisely to provoke a mistrial. A mistrial is still mandatory unless the offended party is willing to waive the right to that remedy. It would make no sense in a case where the offended party invokes its right to mistrial, to allow the offending attorney to escape sanctions on that account. If anything, there is a stronger reason to impose monetary sanctions when a mistrial is declared than when the offended party waives its right to mistrial and the case proceeds with the remaining jury venire.

The district attorney argued at the order to show cause hearing that a warning may serve the function of an order. Certainly if a court admonishes counsel that a repetition of specific conduct will result in a monetary sanction, that statement is tantamount to an order not to repeat the conduct, and should suffice under section 177.5. Indeed, that is what happened in the *Willis* case. But it did not occur in this case.

The superior court also argues that *People v. Tabb, supra,* 228 Cal.App.3d 1300, supports the position that an order is not required as a predicate to a sanction in a case such as this. In *Tabb* the sanction was imposed because counsel failed to appear in court at the time set for a further proceeding. The reviewing court treated the issue in these terms: "[the attorney] had a professional duty of constitutional dimension to appear for his client at scheduled court hearings. He was present at one of the two hearings at which a preliminary hearing date was set and confirmed. No separate order commanding an attorney to be present to appear for his or her client on such a routine matter should be or was required." (*Id.* at p. 1311.) The superior court reads this passage to mean that an order is not required to justify a section 177.5 sanction against an attorney for failure to appear at a scheduled proceeding. The better reading, we believe, is that the order setting that proceeding, made in the presence of counsel, was an implicit order that counsel appear. Thus, the court said that no "separate" order was required.

We need not resolve the issue in the context of an attorney's failure to appear at a noticed court proceeding. In this case, there is nothing approximating a court order. Section 177.5 has no application absent a court order.

It follows that we must reverse the monetary sanction. What should a trial court do in order to preserve the option of imposing a monetary sanction should the conduct of counsel merit that option? Make an order. Yet it seems degrading to the judicial process and to the attorneys who practice before our courts for a court to have to warn counsel that, on penalty of a monetary

sanction, they must not violate the Constitution. Based on our reading of *Wheeler* cases in the literature, it appears that the issue usually is raised more than once if it is raised at all, thus giving the court an opportunity to issue an appropriate admonition. And, of course, we see only cases in which the question of a *Wheeler* challenge is raised at trial, then raised again on appeal. We are confident that most attorneys steer well clear of a constitutional misuse of jury peremptory challenges, and that trial judges are able to "distinguish bona fide reasons from sham excuses." (*People v. Burgener, supra*, 29 Cal.4th at p. 864.)

Appellant's brief describes the trial court's ruling in this case as an "arbitrary, mean-spirited order, in patent derogation of the law." It was in derogation of the law because the conduct did not violate a court order, and the ruling was not stated in writing with an explanation of the justifying circumstances. Aside from that, we disagree with the characterization. A *Wheeler* violation only occurs when an attorney deliberately misuses jury peremptory challenges to exclude a prospective juror on the basis of group bias. As the trial court concluded, that is illegal and unprofessional.

## DISPOSITION

The order appealed from, imposing a monetary sanction against counsel, is reversed. No costs are awarded.

Vogel (C. S.), P. J., and Curry, J., concurred.