[No. B212432. Second Dist., Div. Seven. May 20, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD JAMES WARD, Defendant;
JOOHAN SONG, Objector and Appellant.

## COUNSEL

Michael P. Judge, Public Defender, Albert J. Menaster and Mark Harvis, Deputy Public Defenders, for Objector and Appellant.

Thomas M. Reeves, City Prosecutor, for Plaintiff and Respondent.

## OPINION

**JACKSON, J.—**

### INTRODUCTION

Appellant Joohan Song, a deputy public defender for the County of Los Angeles, challenges an order by the trial court (Judge Patrick T. Madden) imposing sanctions pursuant to Code of Civil Procedure section 177.5 (section 177.5). He appealed to the appellate division of the superior court (Patti Jo McKay, Presiding Judge, Fumiko Hachiya Wasserman and Debre Katz Weintraub, Judges), which reversed the order and remanded the matter for further proceedings. On a petition by appellant, we transferred the case to this court under rule 8.1002 of the California Rules of Court in order to settle an important question of law. While we agree that the trial court had the power to impose sanctions under section 177.5, we reverse the order and remand the case for the trial court to state the reasons for the imposition of the sanctions as required by section 177.5.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Proceedings in the Trial Court*

Appellant Mr. Song represented Edward James Ward, who was charged with four misdemeanors. On the first day of trial, the trial court explained its courtroom procedures and specifically stated, "I have a rule against speaking objections against both sides."

During trial, the prosecutor questioned Long Beach Police Officer Victor Vidriales regarding a prior incident of domestic violence. The officer testified that he heard screaming inside. When the door was opened, he saw defendant straddling a woman on the bed, holding her hair with one hand and holding his other hand up as if to strike her. Officer Vidriales did not see defendant strike the woman, but it appeared as though she had been struck or injured.

On cross-examination, Mr. Song established that Officer Vidriales never saw the defendant strike the victim. On redirect examination, the prosecutor had Officer Vidriales reiterate his previous testimony, and then the following colloquy took place:

"[Prosecutor]: She had visible injury?

"[Officer Vidriales]: She did have injuries. Exactly where the injuries were, I can't recall exactly where they were at.

"[Prosecutor]: Any doubt in your mind that he had beaten her?

"Mr. Song: Objection; that's asking for the officer's opinion. There's no basis for all of this. This is all hearsay—

"The Court: Hold on. No speaking—

"Mr. Song: —prosecutorial misconduct.

"The Court: Sir, no speaking objections.

"Mr. Song: Very well.

"The Court: That's the rule. No foundation."

The prosecutor requested a sidebar, then stated: "Case law, there's an accusation of prosecutorial misconduct before the jury, the jury needs to be excused. We need to have a hearing to hear whether or not there was any

misconduct, and the judge needs to make a finding." The court excused the jury, and the following took place:

"The Court: Mr. Song, you made an accusation of prosecutorial misconduct. Do you want to tell us what you think occurred?

"Mr. Song: No, not at this time, your honor.

"The Court: Well, I'm going to admonish you please to not make such a claim, ever, in front of a jury. If there's something that you think has occurred, you have every right to bring it to the court's attention, but it's just not a good thing to do in front of a jury. I don't think it helps anybody."

The prosecutor requested the court sanction Mr. Song for his "unfounded" allegation of prosecutorial misconduct, calling it "misconduct" intended to inflame and prejudice the jury. The trial court responded that since Mr. Song had withdrawn the objection, all the court could do was to make the determination that the objection was unfounded. The court declined to decide the matter until the conclusion of the trial.

The following day, the prosecutor requested that the trial court admonish the jury that the accusation of prosecutorial misconduct was unfounded and the jury was not to consider it. Mr. Song responded that he did not believe the accusation was unfounded, and he was ready to explain why. He explained that the prosecutor had committed misconduct by vouching, being leading and suggestive, and "back-dooring" Officer Vidriales's conclusion.

The trial court told Mr. Song: "Well, you shouldn't have done it in front of the jury. That's number one. It should be done outside the presence of the jury. She shouldn't cite you for misconduct, you shouldn't cite her for misconduct. That's a matter for the court and the parties—" At this point, Mr. Song interrupted: "There is case law to support—"

The trial court interjected: "Yes. I gave you a specific instruction at the beginning of the trial, no speaking objections, and if the accusation of prosecutorial misconduct isn't that, I don't know what is. If you would object, you would say hearsay, you would say irrelevant, whatever your objection is. That's a nonspeaking objection. The conclusion is that the prosecutor has engaged in conduct you deem to be prosecutorial misconduct, but you don't say that in front of a jury, ever. It's not a matter for the jury to be aware of or to deal with.

"If I found prosecutorial misconduct, I would probably dismiss the case, but that's what I think the court's remedy would be. For the jury to hear that,

it's highly inappropriate, no matter what the circumstances are. That's my job to deal with conduct by counsel. And I think it was misconduct by you, sir, to say it in front of the jury. It's highly prejudicial."

The trial court told counsel it would tell the jury it had made no finding of misconduct and admonish the jury to ignore it. The court added: "I don't want to hear in front of this jury 'prosecutorial misconduct.' "

Later, as the prosecutor was cross-examining defendant, Mr. Ward, she asked him whether he had told the police that he had not hit the victim or had hit her in self-defense. Defendant testified he had not told the police those things.

After defendant finished testifying, and out of the presence of the jury, Mr. Song accused the prosecutor of misconduct by improperly questioning defendant about what he told the police after his arrest.[1] The prosecutor responded that defendant had not invoked his right to remain silent but had made statements to the police. Mr. Song requested a mistrial or a curative instruction. The trial court denied his request.

In his argument to the jury, Mr. Song stated: "Now, the prosecutor, she has done certain things here in this case, and I would just like to point out, and it's not necessarily a matter of personal—personalities or personal stuff, but I mean, as a prosecutor you're in a special position in society in that you as jurors hold more esteem for prosecuting attorneys than other attorneys, so when a prosecuting attorney makes representations, they should play by the rules, and one of the rules is this: under the Constitution, under case law, Mr. Ward has a right to remain silent. But she violated that by asking Mr. Ward a question. She also violated that by writing on the chart right up there. Something like this was no statement from Mr. Ward. There was no—there was no statement from Mr. Ward regarding whether the victim was the aggressor."

At that point, the trial court interrupted and the following colloquy took place:

"The Court: Mr. Song, I'm going to ask you—

"Mr. Song: And that is prosecutorial misconduct.

---

[1] Mr. Song erroneously referred to this as *Griffin* error (*Griffin v. California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229] [misconduct for prosecutor to comment on a defendant's failure to testify]) rather than *Doyle* error (*Doyle v. Ohio* (1976) 426 U.S. 610 [49 L.Ed.2d 91, 96 S.Ct. 2240] [misconduct to use defendant's postarrest silence to impeach trial testimony]).

"The Court: Mr. Song, I'm going to admonish you not to make that argument. It is untrue.

"Ladies and gentlemen, you're to disregard that argument. [¶] Ladies and gentlemen, there is no evidence of any prosecutorial misconduct in this case. [¶] Mr. Song, get to . . . .

"Mr. Song: Ladies and gentlemen, we are here. We should all play by the rules—

"The Court: Mr. Song, I'm going to admonish you again: do not make this argument.

"Mr. Song: But that's precisely—I mean, this case—is all about what happened on January 25th. It's not about all this other stuff. I mean, they're bringing all this other stuff. Let's focus on what the real issue is. The real issue is what happened January 25th."

After the jury began deliberations, the trial court told Mr. Song that he had violated the court's order, and the court was going to hold a contempt hearing. It explained:

"The Court: Mr. Song I asked you not to raise the issue of prosecutorial misconduct in front of the jury and you repeatedly did so. You directly violated my ruling, too.

"Mr. Song: I believe—well, your Honor, I—I thought that . . . you'd want to hear that with regards to objections, but—

"The Court: You can't argue prosecutorial misconduct to the jury. You argue that to me.

"Mr. Song: Your Honor, there was—I did argue that. I did ask for it. It was—it's grounds for a dismissal. Denied that—didn't allow for curative jury instructions.

"The Court: Mr. Song, it's grounds for you to get in trouble, big trouble. You directly violated my order, repeatedly, after I instructed you in front of the jury the first time not to bring up prosecutorial misconduct. After I advised you yesterday, you did it again. It's very serious.

"The Court: I suggest you think about it. I'm ordering you to come back here one week from today, March 9th, at 1:30 p.m., and we're going to

address it at that time as a possible contempt. It's serious. You directly violated my order in front of the jury, repeatedly.

"I would have an attorney with me. Understood?

"Mr. Song: It's understood."

The trial court later added that in addition to contempt, the court was considering a sanction under section 177.5. The prosecutor filed points and authorities requesting a finding of contempt, a report to the State Bar and a $1,000 fine.

At the hearing on the matter, the trial court indicated that its findings would be based on Mr. Song's using the term "prosecutorial misconduct" in front of the jury, being told not to do so, then using it again during his argument. Mr. Song's counsel explained that deputy public defenders are trained to object on the ground of prosecutorial misconduct under certain circumstances in order to prevent the objection from being waived on appeal. Mr. Song questioned how he could make such an objection if the trial court precluded him from doing so. His counsel suggested that Mr. Song's actions might be a reflection of the fact he was a relatively new and inexperienced lawyer.

Mr. Song's counsel added that Mr. Song erroneously objected on the ground of *Griffin* error when he meant to object on the ground of *Doyle* error. Counsel acknowledged that neither ground was applicable but argued that Mr. Song should not be punished for making an incorrect objection; lawyers make the objections, and it is up to the trial court to determine whether they are correct or not.

Mr. Song's counsel also pointed out that section 177.5 contains an exception for advocacy. He asserted that argument is advocacy, and therefore Mr. Song could not be sanctioned for statements made during argument.

Mr. Song then apologized to the trial court for not following the court's orders. He also apologized to the prosecutor, explaining that he had not intended his objections to be personal attacks.

The trial court accepted Mr. Song's apology, admonished him and purged the contempt. It imposed sanctions of $200 under section 177.5 for failing to obey a court order.[2]

---

[2] Section 177.5 provides in pertinent part: "A judicial officer shall have the power to impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law, payable to the court, for any violation of a lawful court order by a

## B. *Proceedings in the Appellate Division*

Mr. Song appealed the sanction order to the appellate division of the superior court. In its judgment, the court first addressed appellant's argument that the trial court's order was unlawful because it misunderstood the law concerning preservation of an objection based on prosecutorial misconduct. The court found the "argument obfuscates what occurred in this case. The [trial] court's first order prohibiting speaking objections was not the reason for the imposition of sanctions. It was the court's second order—that counsel not mention 'prosecutorial misconduct' in front of the jury—that was violated by appellant." The court declined to address appellant's argument and instead focused on whether the second order "was a proper exercise of the court's inherent power to control the proceedings." It concluded that the order was proper.

The court was not persuaded by "appellant's contention that 'advocacy of counsel' includes the right to violate a lawful court order." Additionally, it concluded appellant's statements "were not in advocacy on behalf of his client. The purpose of closing argument is for counsel to argue the evidence presented during the trial, and to argue the inferences or conclusions that the jury should draw after applying the law to the evidence." The question whether there has been prosecutorial misconduct, by contrast, "is a legal issue for the court, and not a factual issue for resolution by a jury." Therefore, while an attorney "[w]ithin the scope of protecting his client, has the 'right to press legitimate argument and to protest an erroneous ruling,' " "appellant's argument was improper, and closing argument was not the forum to protest the court's determination of no prosecutorial misconduct."

However, the court concluded, the trial court erred in failing to prepare a written order explaining its issuance of sanctions, as required by section 177.5. For this reason, the court reversed the trial court's order. It noted however, that because it found that appellant violated a lawful court order, the trial court could reissue its order imposing sanctions with the requisite explanation.

Appellant then filed a petition to transfer the case to the Court of Appeal. On December 11, 2008, we granted the petition in order "to settle an important question of law."

---

person, done without good cause or substantial justification. This power shall not apply to advocacy of counsel before the court. For the purposes of this section, the term 'person' includes a witness, a party, a party's attorney, or both."

## DISCUSSION

Appellant raises the same contentions here that he did below: He contends that monetary sanctions were unlawful because the order violated was not a lawful court order; rather, it was based upon a misunderstanding of the applicable law. He also contends that section 177.5 was inapplicable, since it does not apply to advocacy, and argument to the jury is advocacy. In addition, appellant contends the appellate division erred when it remanded the matter to the trial court for correction of the sanctions order.

### A. *Standard of Review*

Appellant asserts that our review of the trial court's order imposing monetary sanctions under section 177.5 is de novo. He is incorrect. We review the order for prejudicial abuse of discretion. (*People v. Tabb* (1991) 228 Cal.App.3d 1300, 1311 [279 Cal.Rptr. 480].)

The imposition of monetary sanctions under section 177.5 " 'is within the discretion of the trial court. That discretion must be exercised in a reasonable manner with one of the statutorily authorized purposes in mind and must be guided by existing legal standards as adapted to the current circumstances.' " (*Winikow v. Superior Court* (2000) 82 Cal.App.4th 719, 726 [98 Cal.Rptr.2d 413], quoting *Moyal v. Lanphear* (1989) 208 Cal.App.3d 491, 501 [256 Cal.Rptr. 296].) Discretion is abused when it exceeds the bounds of reason, all of the circumstances being considered. (*Moyal, supra,* at p. 498.)

### B. *Lawfulness of the Trial Court's Order*

It is appellant's view that the trial court misunderstood the nature of a prosecutorial misconduct objection, which requires that counsel state that the objection is based on prosecutorial misconduct. The trial court's order not to say the words "prosecutorial misconduct," appellant contends, therefore was unlawful. We disagree.

■ It is true that a claim of prosecutorial misconduct must be raised in the trial court or it is forfeited on appeal. (*People v. Hill* (1998) 17 Cal.4th 800, 820 [72 Cal.Rptr.2d 656, 952 P.2d 673].) Defendant must make a timely and specific objection and request a curative admonition to preserve the claim. (*People v. Bolden* (2002) 29 Cal.4th 515, 562 [127 Cal.Rptr.2d 802, 58 P.3d 931]; *Hill, supra,* at p. 820.) The question raised by the parties is whether those specific words, "prosecutorial misconduct," must be said in order to preserve the claim.

Even assuming arguendo that defense counsel must specifically say the words "prosecutorial misconduct," there is no requirement that those words

must be said in front of the jury. Defense counsel can object and ask to approach the bench, where the specific objection can be made outside the presence of the jury (see, e.g., *People v. Valencia* (2008) 43 Cal.4th 268, 282 [74 Cal.Rptr.3d 605, 180 P.3d 351]) or object to the particular conduct and later, out of the presence of the jury, raise the issue of misconduct (see, e.g., *People v. Bennett* (2009) 45 Cal.4th 577, 607–610 [88 Cal.Rptr.3d 131, 199 P.3d 535]).

■ As this court has observed, trial courts have the inherent power, derived from the state Constitution, to control the proceedings before them. (*Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1377 [5 Cal.Rptr.2d 882].) The courts may adopt their own rules of procedure so long as those rules are not inconsistent with due process, statutes, or statewide rules of court. (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351–1352 [63 Cal.Rptr.3d 483, 163 P.3d 160].) As discussed above, it is not required by law that defense counsel say the words "prosecutorial misconduct" in front of the jury. The trial court's order that appellant not do so therefore was lawful.

Appellant also analogizes to *Cooper v. Superior Court* (1961) 55 Cal.2d 291 [10 Cal.Rptr. 842, 359 P.2d 274], which states that " 'it is not contempt for a lawyer to seek respectfully to make and press upon a trial court, even though the court does not desire to hear him at that time, some objection or other contention which he deems it necessary to make in the interests of his client. Such conduct on the lawyer's part is not a contempt because, as this Court and the District Courts of Appeal have held, it is not only the lawyer's right, it is his duty, at all times to protect and advance the interests of his client.' " (*Id.* at p. 298.)

*Cooper* involved a situation in which the trial court interrupted jury deliberations to comment on the evidence. The appellant interrupted the court in order to object that the court was invading the province of the jury, and the court held him in contempt. (*Cooper v. Superior Court, supra*, 55 Cal.2d at pp. 295–297.) The Supreme Court, while acknowledging the trial court's inherent power to control the proceedings, held that the appellant could not be held in contempt, in that, under the circumstances, the appellant was required to object at that particular time in order to protect his client's interests. (*Id.* at pp. 300–301.)

In the instant case, however, the trial court did not prevent appellant from objecting or even from raising the issue of prosecutorial misconduct. All it did was order appellant not to use the words "prosecutorial misconduct" in front of the jury. As discussed above, it was not necessary for appellant to use those words in front of the jury to protect his client's interests. *Cooper* thus is inapplicable.

## C. *Advocacy Exception to the Power to Sanction*

Appellant takes the position that "[a]rgument to a jury is the essence of advocacy of counsel." Since his accusation of prosecutorial misconduct was part of his argument to the jury, he contends, it was advocacy and he could not be sanctioned for it.

■ Advocacy has been defined as "the action of advocating, pleading for, or supporting" (Webster's 3d New Internat. Dict. (1993) p. 32), "the act of advocating, or speaking or writing in support (*of* something)" (Webster's New World Dict. (3d college ed. 1991) p. 20), "[t]he act of pleading for, supporting, or recommending active espousal" (Black's Law Dict. (5th ed. 1979) p. 50), and " '[t]he act of pleading for, supporting, or recommending; active espousal' " (*Gitlow v. New York* (1925) 268 U.S. 652, 665 [69 L.Ed. 1138, 45 S.Ct. 625]). It is clear from these definitions that advocacy is the act of pleading, arguing, supporting or recommending a particular position or idea.

Within the context of a trial, argument, in and of itself, is not necessarily advocacy. In *People v. Smith* (2003) 30 Cal.4th 581 [134 Cal.Rptr.2d 1, 68 P.3d 302], the defendant raised a claim of prosecutorial misconduct, contending that "the prosecutor impermissibly impugned the integrity of defense counsel." (*Id.* at p. 635.) The Supreme Court disagreed, stating, "The prosecutor did not attack defense counsel's integrity but instead attacked the defense case and argument. Doing so is proper and is, indeed, the essence of advocacy." (*Ibid.*) We infer from the *Smith* opinion that advocacy of counsel is not merely any argument but is proper argument on behalf of a party in favor of a particular position.

In *People v. Muhammad* (2003) 108 Cal.App.4th 313 [133 Cal.Rptr.2d 308], Division Four of this court addressed the issue of sanctions under section 177.5. *Muhammad* involved a *Wheeler*[3] motion. The trial court found that the prosecutor violated *Wheeler* and declared a mistrial. (*Muhammad, supra,* at pp. 317–318.) It then issued an order to show cause why sanctions should not be imposed under section 177.5. One of the arguments raised by the prosecutor in opposing the imposition of sanctions was that "section 177.5 does not apply to an advocacy situation such as jury selection . . . ." (*Muhammad, supra,* at p. 318.) The trial court rejected that and the prosecutor's other arguments and imposed sanctions. (*Ibid.*)

On appeal, the court reiterated that under section 177.5, an attorney may be sanctioned for violating a lawful court order. (*People v. Muhammad, supra,*

---

[3] *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].

108 Cal.App.4th at pp. 323–324.) Because there was no court order that the prosecutor violated, the appellate court concluded that the sanction order had to be reversed. (*Id.* at p. 325.) The court noted: "Certainly if a court admonishes counsel that a repetition of specific conduct will result in a monetary sanction, that statement is tantamount to an order not to repeat the conduct, and should suffice under section 177.5." (*Ibid.*) In determining what a trial court must do "to preserve the option of imposing a monetary sanction" for a *Wheeler* violation, the court noted that based on its "reading of *Wheeler* cases in the literature, it appears that the issue usually is raised more than once if it is raised at all, thus giving the court an opportunity to issue an appropriate admonition." (*Id.* at pp. 325–326.)

The court in *Muhammad* did not address the advocacy issue. We perceive in that case a distinction between advocacy and conduct which may be subject to sanctions under section 177.5. Within the scope of advocacy, counsel is free to exercise peremptory challenges and argue in support of those challenges. Once the trial court rules that a particular basis for exercising a peremptory challenge is impermissible under *Wheeler* and orders counsel not to exercise any more challenges on that basis, it is no longer advocacy to exercise a peremptory challenge on that basis and argue its legitimacy. Counsel has advocated his client's position as forcefully as possible and received an adverse ruling. The issue has been preserved for appeal. Violating the court's order by exercising a peremptory challenge on a basis the trial court already has ruled impermissible is no longer advocacy; counsel's pleas, arguments and recommendations have been rejected, and there is nothing more to be gained by raising them again.

Turning to the instant case, when the appellant first raised the issue of prosecutorial misconduct, the trial court admonished him that, in future, "[i]f there's something that you think has occurred, you have every right to bring it to the court's attention, but it's just not a good thing to do in front of a jury." The following day, in discussing the matter, the trial court reminded appellant that the issue of prosecutorial misconduct was one for the court, not the jury, and he was not to use the words "prosecutorial misconduct" in front of the jury. The court also ruled against appellant on his claims of miscon- duct. Then, during argument, appellant began to suggest that the prosecutor did improper things during the course of the trial. When the trial court tried to stop him, he blurted out, "And that is prosecutorial misconduct."

At that point, appellant was no longer engaged in advocacy. He had argued his position and received adverse rulings, preserving the matter for appeal. His comment could not further his client's case. It was a gratuitous and deliberate violation of a lawful court order. Sanctions under section 177.5 for this conduct therefore were appropriate.

■ This conclusion is not inconsistent with the authority cited by appellant that if an attorney, "in discharging this duty, . . . happens to be persistent or vehement or both in the presentation of his points, he is still, nevertheless, within his legitimate rights as an attorney, so long as his language is not offensive or in contravention of the common rules of decorum and propriety. As well may be expected in forensic polemics, he cannot always be right, and may wholly be wrong in his position upon the legal question under argument, and to the mind of the court so plainly wrong that the latter may conceive that it requires no enlightenment from the argument of counsel. But, whether right or wrong, he has the right to an opportunity to present his theory of the case on any occasion where the exigency of the pending point in his judgment requires or justifies it." (*Platnauer v. Superior Court* (1917) 32 Cal.App. 463, 475 [163 P. 237].)

Appellant had the opportunity to present his points and argue his position, i.e., engage in advocacy on behalf of his client. Sanctions were not imposed on appellant for persistently and vehemently arguing his point or for being wrong in his arguments. Sanctions were imposed for making an argument and using certain words in front of the jury, as opposed to in front of the court, despite a direct order that he not do so. The imposition of sanctions did not interfere with appellant's fulfillment of his duty as an attorney.

## D.  *Remand to the Trial Court*

The appellate division found that the trial court erred in failing to prepare a written order explaining its issuance of sanctions, as required by section 177.5. It reversed the trial court's order and remanded the matter back to the trial court. Appellant asserts that this was error, in that an "insufficient sanction order" is a final order that "cannot later be amended or 'fixed.' " Appellant's assertion rests on a faulty premise.

The appellate division did not remand the order to the trial court for amendment. It *reversed* the order with directions to enter an order which complies with the requirements of section 177.5. This was a proper exercise of its authority. (Code Civ. Proc., § 77; *Thomasian v. Superior Court* (1953) 122 Cal.App.2d 322, 331 [265 P.2d 165].) It is also a proper exercise of our authority. (Code Civ. Proc., § 43; *Caldwell v. Samuels Jewelers* (1990) 222 Cal.App.3d 970, 979 [272 Cal.Rptr. 126].) Section 177.5 provides that "[a]n order imposing sanctions shall be in writing and shall recite in detail the conduct or circumstances justifying the order." The order here did not contain the requisite recital. Accordingly, it must be reversed and the case remanded so the trial court can enter a proper sanctions order.

## DISPOSITION

The order imposing sanctions under section 177.5 is reversed. The trial court is directed to enter a new written order which recites in detail the conduct or circumstances justifying the imposition of sanctions.

Woods, Acting P. J., and Zelon, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 9, 2009, S174137.