Filed 2/18/21  P. v. Cubit CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B292833 |
| Plaintiff, | (Los Angeles County Super. Ct. No. LA086545) |
| v. | |
| JARED CUBIT, Defendant; | |
| THOMAS W. KIELTY, Objector and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gregory A. Dohi, Judge.  Affirmed.

Thomas W. Kielty, in pro. per., for Objector and Appellant.

Frederick R. Bennett, Court Counsel, for the Superior Court of Los Angeles County as Amicus Curiae on behalf of Plaintiff.

_____

A witness in a criminal trial complained defense counsel Thomas W. Kielty was harassing him with frequent calls and text messages. The court directed Kielty not to contact the witness. Kielty text messaged the witness later the same day to ask a question relating to his testimony. Following the conclusion of the criminal case, the court imposed sanctions against Kielty pursuant to Code of Civil Procedure section 177.5[1] in the amount of $300 for violating its no-contact order. On appeal Kielty contends the court erred in imposing sanctions because he did not violate a lawful court order. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Kielty represented Jared Cubit, a defendant charged by information with robbery and three counts of assault with a deadly weapon. A witness under subpoena in the case told Kielty prior to trial, and testified for the People on direct examination, that he had used his smart phone and social media account to record the assaults and had showed his video recording to the police. The witness also testified to the contents of the recording.

After the prosecutor completed her direct examination, she informed the court, outside the presence of the jury, the witness had complained to her the previous evening that he had felt harassed by Kielty's repeated efforts to contact him about the case. The court advised the witness in open court he had no duty to talk to either the prosecutor or defense counsel outside the court proceedings. The witness responded he did not want to talk to Kielty and "he [Kielty] knows why." Directing his comments to Kielty, the witness continued, "So, I don't know what I can say and not say. I don't want to cuss, you know what I'm saying?

---

[1]     Statutory references are to this code.

2

But I just want to talk to you [Kielty] about your approach to me, man." Kielty said, "Yeah." The court stated, "Okay, Mr. Kielty's right here. Mr. Kielty, you heard it from the man directly. He doesn't want you to speak with him." Kielty responded, "He just said he wants to tell me . . . ." The witness interjected, "All I want to talk to you about is how you have been treating me, man. How you have been texting me and calling me. I don't want to talk about the case with you." Turning to Kielty, the court stated, "So, there you go. So, Mr. Kielty, [the witness] made his feelings very clear. He has a right not to be contacted any further, so please do not communicate with him any further. We're done." The witness asked the court, "He understands now?" The court responded, "He's got the message. Okay. Thank you."

On cross-examination the witness testified he had tried to send a copy of his video recording to the police as an email attachment, as the case detective had requested, but the file was too large to send. He ultimately deleted the video after police told him they did not need it.[2]

After completing his testimony for the day, the witness asked the court whether he had any obligation to return to court. The court responded, "You might get a call in the future from one side or the other, so hang tight. But you're free to go today." The witness asked, "So I'm supposed to talk to whoever calls me?" The court replied, "Up to you, entirely up to you. . . . As any witness does, you have the right to say, 'I don't want to talk to

---

[2]     Other video recordings of the incident were introduced into evidence.

3

you,' but if they're saying you got to come back to court, then you got to come back to court."

Later that day Kielty sent the witness a text message.[3] The witness became irate about the contact and reported it to the prosecutor, who, in turn, reported it to the court. Kielty explained to the court he had simply wanted the name of the social media account the witness had used to record the incident. "[R]ather than having [the witness] come back into court for something of that nature, I thought it made more sense just to send him a particular message. I don't consider a text message to be harassing, and I did not ask to speak to him. I just asked him for the name of the [account] so we could see if we could possibly retrieve the video."

The court stated, "My order, I thought, was very clear and I'll ask for it at some point to be transcribed. It was, Mr. Kielty, for you to have no contact with [the witness] at all. . . . I'm going to take a look at the transcript. I know you're trying to do your job, but so am I, and I made orders and if they have been violated, I will take it seriously and will consider something in the nature of contempt proceedings."

Kielty responded, "Your honor directed me not to talk to him. I don't think your honor ever said not to contact him. It would be a silly order to make because it was clear if he needed to be called back to court, he could be called back to court. . . ." The

---

[3]    The text message, which Kielty read into the record, stated, "Can you tell us the name you used on the Instagram account so we can try to retrieve the video from Instagram? Thanks. I apologize for the disrespect you mentioned yesterday. I'm just trying to do my job. Thanks, Tom Kielty."

4

court told Kielty it would review the transcript and address the possibility of sanctions at a future hearing.

Later in the trial, following a separate colloquy between the court and Kielty over Kielty's attempt to introduce evidence the court believed it had previously excluded, the trial court angrily criticized Kielty for "skirting my orders" and mentioned its earlier no-contact order as an example. Kielty disagreed that he had tried to flout the court's orders. "In terms of the no contact . . . , what I took away from that is, you know, do not try to speak to him directly or on the phone. It never occurred to me that it would be improper in the exercise of my role and the guardian of my client's constitutional rights to subpoena witnesses, call them into court, present evidence, present a defense, that I would be unable to contact a witness to ask them a question or ask them to come into court via text message or email. I don't consider that to be a blatant violation of your honor's order. It certainly doesn't rise to the level of contempt."

On August 28, 2018 several months after the criminal trial had concluded,[4] the court held a noticed hearing to determine whether to sanction Kielty pursuant to section 177.5 for violating its no-contact order. Kielty argued there had been no lawful

---

[4]    The jury acquitted Cubit on all charges. Kielty moved pursuant to section 170.1, subdivision (a)(6), to disqualify the trial judge from presiding over Cubit's probation violation hearing, which trailed the criminal case. The court struck the statement of disqualification for cause pursuant to section 170.4, subdivision (b), on the ground it was facially deficient. Kielty filed a petition for writ of mandate in this court pursuant to section 170.3, subdivision (d), challenging that order. On May 23, 2018 we denied the petition. (*Cubit v. Superior Court*, B290124.)

order per se, only a request, as evidenced by the court's use of the word, "Please." At best, Kielty argued, the court's language was ambiguous, and Kielty's conduct fell far short of a knowing violation of a court order. Moreover, he argued, any no-contact order infringed his obligation to his client to zealously defend him and his client's due process rights to a defense. Unimpressed with Kielty's suggestion the court's language was a request rather than order and unpersuaded by his other arguments, the court imposed sanctions against Kielty in the amount of $300 pursuant to section 177.5.

Kielty filed a timely notice of appeal.[5]

---

[5] The order issuing sanctions is an appealable order. (See § 904.1, subd. (b); *People v. Singh* (2015) 234 Cal.App.4th 1319, 1332, fn. 13 ["[c]ounsel has the remedy of appeal for erroneously imposed sanctions"].) Kielty filed his notice of appeal on August 31, 2018 on the Judicial Council's optional form for appeals in felony cases.

On October 18, 2018 the Administrative Presiding Justice of the Second District issued orders denying Kielty's motion to designate his appeal as a criminal appeal and, as a consequence, to waive fees in this court based on the indigency of his client in the superior court case. In the course of those orders the Administrative Presiding Justice indicated the appeal should be styled *Kielty v. Superior Court of Los Angeles County*. For purposes of this opinion, however, we have captioned the case to retain the names of the plaintiff and defendant in the underlying case, as directed by the California Style Manual (Cal. Style Manual (4th ed. 2000) § 6:41, pp. 241-242) and as done in other appellate cases. (E.g., *People v. Hundal* (2008) 168 Cal.App.4th 965, 969 [defendant's appeal from judgment of conviction and deputy district attorney's separate appeal from sanctions award captioned the same, but given different case number]; see *People*

6

## DISCUSSION

### 1. *Governing Law and Standard of Review*

Section 177.5 provides in part, "A judicial officer shall have the power to impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law, payable to the court, for any violation of a lawful court order by a person, done without good cause or substantial justification." Applicable to both criminal and civil proceedings, section 177.5 is intended to "punish and deter violations of lawful court orders [citation], and to compensate the judicial system for the cost of unnecessary hearings." (*People v. Landers* (2019) 31 Cal.App.5th, 288, 303; accord, *People v. Hooper* (2019) 40 Cal.App.5th 685, 695.)

Section 177.5 "does not require that the offending act be 'willful,' but only that it be committed without good cause or substantial justification" (*People v. Muhammad* (2003) 108 Cal.App.4th 313, 324; accord, *People v. Tabb* (1991) 228 Cal.App.3d 1300, 1311), that is, "without a valid excuse." (*People v. Kareem A.* (2020) 46 Cal.App.5th 58, 78; accord, *In re Woodham* (2001) 95 Cal.App.4th 438, 446; *Seykora v. Superior Court* (1991) 232 Cal.App.3d 1075, 1081; *Tabb*, at p. 1311.)

We review an order imposing sanctions pursuant to section 177.5 for abuse of discretion. (*People v. Hooper*, *supra*, 40 Cal.App.5th at p. 692; *People v. Ward* (2009) 173 Cal.App.4th

---

*v. Muhammad* (2003) 108 Cal.App.4th 313, 320 ["the trial court is not and cannot be a party in a direct appeal from a case it has tried"].) As in those cases, we treat the superior court's respondent's brief as a brief amicus curiae. (*Hundal*, at p. 969; *Muhammad,* at p. 320.) We do not, however, reconsider the Administrative Presiding Justice's order regarding fee waiver.

1518, 1527.) "'"A trial court's exercise of discretion will not be disturbed unless the record establishes it exceeded the bounds of reason or contravened the uncontradicted evidence [citation], failed to follow proper procedure in reaching its decision [citation], or applied the wrong legal standard to the determination [citation]." [Citation.] A discretionary ruling will not be reversed merely because of a difference of opinion between the appellate tribunal and the trial judge.'" (*People v. Landers*, *supra*, 31 Cal.App.5th at pp. 303-304; accord, *Hooper*, at p. 692.)

2. *The Court Did Not Abuse Its Discretion in Imposing Sanctions for Kielty's Violation of Its No-contact Order*

Kielty argues the court's language, "[P]lease do not communicate with [the witness] any further" was merely a request, not an order. If the court had intended to order Kielty not to contact the witness, it would have used the term "order" and would not have prefaced its comments with "please." Any ambiguity on this point was clarified, Kielty argues, when the court told the witness at the conclusion of his testimony he "might get a call in the future from one side or the other so hang tight," language suggesting Kielty could contact the witness. Neither of these arguments is persuasive.

At the threshold, a trial court's use of the word "please" does not transform a court order into a request. As the trial court observed in rejecting the same argument at the sanctions hearing, the emphasis in such a circumstance is on the "don't," not on the "please." Nor is the court's failure to use the words, "I order you," dispositive. When, as here, the court directs a party on the record to act or refrain from acting, the court's directive is an order. (See, e.g., *People v. Ward*, *supra*, 173 Cal.App.4th at p. 1523 [where trial court admonished defense counsel not to

8

raise prosecutorial misconduct in closing argument and defense counsel did so anyway, defense counsel violated lawful court order justifying sanctions pursuant to section 177.5].)

Kielty's reliance on the purported ambiguity created by the court's comments to the witness at the conclusion of the witness's testimony is also misplaced. At most the court's comments suggested the defense could compel the witness to return. Nothing in the court's statements indicated Kielty could contact the witness with substantive inquiries about his testimony without leave of court.

Kielty's contention section 177.5 sanctions were improper because the order was unlawful is also without merit. The court's power to make such orders is derived from section 128, subdivision (a)(5), "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (See *People v. Ward, supra,* 173 Cal.App.4th at p. 1528.) If Kielty believed, as he now asserts, the order infringed his ability to provide a defense, Kielty could have raised his objections to the trial court and sought leave of court to make his inquiry. He never gave the court the chance to address those concerns. Instead, he simply contacted the witness directly, believing that his inquiry was sufficiently innocuous as to not rise to the level of harassment. While Kielty's assessment, no doubt sincere, may well have been reasonable, his actions— disregarding the court's order—were not.[6]

---

[6] Kielty's suggestion the order violated his client's constitutional rights is also without merit. The court's order did not prevent Kielty from calling the witness back to court or obtaining the court's permission to make the limited inquiry.

Finally, Kielty spends much of his lengthy appellate brief describing numerous rulings and trial events that he insists reflect a trial judge "aligned with the prosecutor and biased against him." We do not address the rulings Kielty cites to bolster this argument other than to note many of them were the subject of his petition for a writ of mandate pursuant to section 170.3, subdivision (d), which we denied. Our limited task on appeal is simply to determine whether Kielty violated a lawful court order and, if so, whether the court abused its discretion in finding that violation, even if not willful, to be without a valid excuse. As to the first question, the undisputed evidence established Kielty violated a court order. As to the second, no abuse of discretion occurred. (See *People v. Landers*, *supra*, 31 Cal.App.5th at p. 304, fn. 9 ["[t]he idea that a mere difference of opinion between the appellate and trial courts will not justify reversal of a sanctions order under . . . section 177.5 reflects the practical reality that sanctions determinations often involve "'fact-intensive, close calls'""].)

## DISPOSITION

The court's order imposing $300 in sanctions is affirmed. No costs are awarded.

PERLUSS, P. J.

We concur:

FEUER, J                    McCORMICK, J.[*]

---

[*] Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.