Filed 4/19/23  P. v. Orosco CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JULIAN OROSCO,<br><br>    Defendant and Appellant. | F083576<br><br>(Super. Ct. No. 18CR-03118A)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Merced County.  Steven K. Slocum, Judge.

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Kathryn L. Althizer, for Plaintiff and Respondent.

-ooOoo-

Defendant Julian Orosco was convicted of assault with a firearm and shooting at an occupied motor vehicle.  Defendant contends that the prosecutor committed misconduct during direct examination of a witness because the questioning sought

inadmissible hearsay evidence and evidence that lacked foundation. Defendant also contends that the prosecutor improperly tried to admit bad character evidence. The People contend that defendant forfeited this claim because he did not object on the grounds of prosecutorial misconduct at trial. The People also contend that the prosecutor's line of questioning was not prosecutorial error and that any error was harmless. We affirm.

## PROCEDURAL SUMMARY

On April 13, 2021, the District Attorney of Merced County filed a first amended information charging defendant with attempted murder (Pen. Code, §§ 664 & 187, subd. (a);[1] count 1); assault with a firearm (§ 245, subd. (a)(2); count 2); shooting at an occupied motor vehicle (§ 246; count 3); and dissuading a witness (§ 136.1, subds. (b)(1), (2) & (c)(1); count 4). As to counts 1 and 2, the information alleged defendant personally used a firearm (§§ 12022.53, subd. (c), 12022.5, subd. (a), respectively). As to count 4, the information alleged defendant acted for the benefit of a criminal street gang in committing the offense (§ 186.22, subd. (b)(4)(C)).[2]

In May 2021, the jury found defendant not guilty on count 1, but guilty on counts 2 and 3. The jury was unable to reach a unanimous verdict on count 4. The jury found true the firearm enhancement for count 2. The judge declared a mistrial for count 4.

In September 2021, the trial court dismissed count 4 at the prosecutor's request. The trial court sentenced defendant as follows: on count 2, two years plus 10 consecutive years for the firearm enhancement (§§ 245, subd. (a)(2), 12022.5, subd. (a)); and on count 3, seven years to run concurrently (§ 246).

Defendant timely appealed.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] The information alleged gang enhancements for counts 1 through 3 that were dismissed on the first day of trial on the prosecution's motion.

## FACTUAL SUMMARY

Between 11:30 a.m. and noon on June 2, 2018, S.R. was driving his SUV in Livingston with his girlfriend at the time, Gloria T. S.R. stopped his SUV because a car was backing out of a driveway into the street. S.R. saw defendant getting out of a black Infinity sedan that was partially parked in another driveway. Defendant gave S.R. a look that S.R. considered "mean." S.R. said, "What's up?" to defendant. Defendant then pulled a gun from his waistband, loaded it, and shot the gun once at S.R.'s SUV. Defendant was approximately two car lengths away from the SUV when he shot the gun. The bullet struck the SUV on the rear driver's side tailgate. Defendant had an "Oh f[**]k. What did I just do?" look on his face after he shot the SUV. S.R. said to defendant, "What the f[**]k was that? What the f[**]k was that? That's all you got? [¶] You little b[***]h." S.R. then drove away.

S.R. drove to a park. He discovered the bullet hole in his SUV about 30 minutes later after he arrived at the park. S.R. was afraid to call 9-1-1. He sent a text message that day to Livingston Police Officer John Ramirez stating: "It's S[.R.T.]. Julian, the one that lives with D[.], shot at me with a gun. He hit my truck. He drives a black Infinity."[3] After this incident, S.R. began seeing Livas gang members on his house's surveillance cameras driving slowly by his house while making gang signs.[4]

Ramirez was on vacation when S.R. text messaged him about the shooting. He saw S.R.'s text message after he returned from vacation on June 14, 2018. Ramirez called S.R. who was hysterical on the phone. S.R. was hesitant to come to the Livingston Police Department.

On June 15, 2018, S.R. met with Livingston Police Officer Thomas Griffin at a

---

[3]     S.R. had Ramirez's work cell phone number from previous contacts with him.

[4]     Defendant was a member of the Livas gang.

dead-end street to do a "six-pack" photo lineup.[5] S.R. circled a photo of defendant to identify him as the person who shot at him on June 2, 2018. Griffin also examined the bullet hole in S.R.'s SUV. The bullet had penetrated three layers of the SUV. Griffin believed the bullet hole came from a handgun. No firearms were recovered by the police in connection with this case.

On June 16, 2018, S.R. was driving his SUV in Livingston when he saw defendant driving his sedan to a nearby intersection. S.R. continued driving and pulled to the curb to pick up a friend. Defendant's sedan pulled up next to S.R.'s SUV. Armando Sanchez Partida and defendant were in the sedan. Partida and defendant got out of the sedan. Partida came up to S.R.'s halfway open car window and said, "You tripping on the homies?" S.R. responded, "Nah. Your homies are tripping on me."[6] Partida threw a punch at S.R. who blocked it. S.R. then drove away in his SUV. He drove back to his friend's house to drop him off and go out by himself. S.R. reported this incident to Livingston Police Officer Hector Becerra that day.[7]

## DISCUSSION

Defendant contends that the prosecutor committed misconduct during her direct examination of Becerra because a line of questioning sought inadmissible hearsay evidence and evidence that lacked foundation. Defendant also contends that evidence

---

**5**    Griffin testified that a "six-pack" photo lineup is an array of six photos including one photo of a person believed or suspected to be part of a police investigation and five other photos of people that meet the general appearance requirements of the suspect.

**6**    S.R. understood "homies" to be in reference to "gangsters," the Norteños. The Livas are the local Norteño gang in Livingston. Partida was also a member of the Livas gang.

**7**    There were minor differences between S.R.'s testimony and witness testimony about this incident. The differing testimony is not relevant to the issues raised on appeal and thus, are not discussed in detail.

regarding his probation status and a gun discovered in 2011 was improper character evidence.

I.       THE PROSECUTION'S QUESTIONING OF BECERRA

The prosecution called Becerra as a witness at trial.  The prosecutor told the judge outside the jury's presence that she had advised the officer witnesses to leave defendant's probation status out of their testimony.  The prosecutor asked Becerra during direct examination about a prior contact with defendant at a park in Livingston on November 3, 2011.  Becerra testified that he was called to assist another agency with three people including defendant standing next to the bathroom at the park.

"[PROSECUTOR]:  Did you check inside of the bathroom to see if there was anything inside of the bathroom?

"[BECERRA]:  No.

"[PROSECUTOR]:  Okay.  And were you there with another agency when they checked inside of the bathroom?

"[BECERRA]:  Yes.

"[PROSECUTOR]:  And what was located in the bathroom?

"[DEFENSE COUNSEL]:  Objection, Your Honor.  Lack of foundation.

"THE COURT:  Sustained.

"[DEFENSE COUNSEL]:  Thank you.

"[PROSECUTOR]:  And so you were on scene -- you arrived on scene with Probation; correct?

"[DEFENSE COUNSEL]:  Objection, Your Honor.  We had –

"THE COURT:  Assumes facts not in evidence?

"[DEFENSE COUNSEL]:  Thank you.

"THE COURT:  Sustained.

"[PROSECUTOR]: So you -- you arrived on scene at Memorial Park; correct?

"[DEFENSE COUNSEL]: I'd ask that it be -- the jury be instructed to disregard [the prosecutor's] question that was sustained.

"THE COURT: Okay. [¶] Attorneys questions aren't evidence. So the request is denied. [¶] Next question.

"[PROSECUTOR]: Thank you, Your Honor. [¶] … Becerra, so you stated that you had arrived at Memorial Park to assist Probation?

"[DEFENSE COUNSEL]: Objection, Your Honor. Assumes a fact not in evidence. [¶] At this point I have a motion I'd like to make outside of the presence of the jury.

"THE COURT: The request is denied.

"[DEFENSE COUNSEL]: Okay.

"THE COURT: Next question. [¶] It's sustained. The objection is sustained.

"[PROSECUTOR]: Okay. [¶] … How did you come to Memorial Park, Corporal Becerra?

"[BECERRA]: I was called to assist another agency with three subjects they had detained.

"[PROSECUTOR]: Okay.

"[BECERRA]: -- at the park. [¶] … [¶]

"[PROSECUTOR]: And when you arrived on scene, you had previously stated they were standing outside of a bathroom?

"[BECERRA]: Yes. With the other agency.

"[PROSECUTOR]: Okay. And so did you assist in an investigation that was going on with that agency?

"[BECERRA]: Yes.

"[PROSECUTOR]: And what was the outcome of that investigation?

"[DEFENSE COUNSEL]: Objection, Your Honor. Vague.

6.

"THE COURT: Sustained.

"[PROSECUTOR]: Did you search -- did you conduct any searches during that investigation?

"[BECERRA]: No. The other agency had searched them prior to my arrival.

"[PROSECUTOR]: Okay. And what -- what – [¶] Did you take over any evidence?

"[DEFENSE COUNSEL]: Objection, Your Honor. Lack of foundation.

"THE COURT: Overruled.

"[BECERRA]: Yes. What -- the handgun that was located in the bathroom.

"[DEFENSE COUNSEL]: I'm going to object, Your Honor. Lack of foundation. That's multiple – that's hearsay, at least.

"THE COURT: Well

"[DEFENSE COUNSEL]: He didn't conduct a search of the bathroom. He wasn't present when the search was conducted, the alleged search was conducted. And he didn't secure any of the evidence.

"THE COURT: Okay. [¶] [Prosecutor]?

"[PROSECUTOR]: Yes.

"THE COURT: As to the objection as to lack of foundation?

"[PROSECUTOR]: Yes. [¶] He laid the foundation, Your Honor, that he was at Memorial Park, that he did observe the three individuals outside of the bathroom, that he did assist in the investigation, that the investigation is actually handed over to … Becerra, and at that point a firearm was located in the bathroom stall.

"THE COURT: Okay.

"[DEFENSE COUNSEL]: That –

"THE COURT: It's sustained. Lack of foundation. It's stricken.

7.

"[DEFENSE COUNSEL]: Thank you, Your Honor. [¶] I have a motion I'd like to make now."

The judge then asked the jury to leave the courtroom. Defense counsel moved for a mistrial arguing that, through her questioning, the prosecutor introduced defendant's probation status at the time of Becerra's contact with him in 2011. He argued that the fact that defendant was on probation was unduly prejudicial. Defense counsel further contended that the prosecutor continually attempted to elicit testimony about the handgun that was discovered in the bathroom without laying the foundation. Defense counsel argued that the handgun was propensity evidence.

The judge denied defendant's request for a mistrial. The judge then admonished the prosecutor for continually attempting to elicit hearsay testimony or testimony where no foundation can be laid. The prosecutor explained that she understood that Becerra had participated in the search of the bathroom in 2011. She believed possession of the firearm to be relevant as a primary activity of the gang.

The judge then ordered an Evidence Code section 402 hearing with Becerra. Becerra testified that he did not observe the gun inside the bathroom. The gun was discovered by a probation officer and then provided to Becerra as evidence. The judge therefore sustained defense counsel's objection but did not believe there was any testimony to strike. Defense counsel asked the judge to admonish the jury to disregard those questions. The judge responded "Understood." The jury was then brought back into the courtroom and the judge noted in the jury's presence his sustaining of defendant's objection. The prosecutor moved on to question Becerra regarding other prior contacts with defendant.

II.    APPLICABLE LAW AND ANALYSIS

The federal and state standards regarding prosecutorial misconduct are well established. "A prosecutor's conduct violates a defendant's federal constitutional rights when it comprises a pattern of conduct so egregious that it infects 'the trial with

unfairness as to make the resulting conviction a denial of due process.' " (*People v. Bennett* (2009) 45 Cal.4th 577, 594–595 (*Bennett*).)  Conduct by a prosecutor that does not render a trial fundamentally unfair is error under state law only if it involves " 'the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury.' " (*People v. Crew* (2003) 31 Cal.4th 822, 855.)  We consider the effect of the prosecutor's conduct on defendant, not on whether the prosecutor acted in bad faith or with wrongful intent.  (*Id.* at p. 839.)[8]

A. *Forfeiture*

The People contend that defendant forfeited this claim on appeal by failing to object on the grounds of prosecutorial misconduct at trial.

"To preserve a claim of prosecutorial misconduct for appeal, ' "the defense must make a timely objection at trial and request an admonition." ' " (*Bennett*, *supra*, 45 Cal.4th at p. 595.)  A defendant's failure to object will be excused if an objection would have been futile or if an admonition would not have mitigated the harm caused by the conduct.  (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 853.)  "[T]he absence of a request for a curative admonition does not forfeit the issue for appeal if 'the court immediately overrules an objection to alleged prosecutorial misconduct [and as a consequence] the defendant has no opportunity to make such a request.' " (*People v. Hill*, *supra*, 17 Cal.4th at p. 820.)

Defense counsel repeatedly objected to the prosecutor's questions regarding the search of the park's bathroom and to questions regarding what was discovered in the bathroom.  Defense counsel made an initial request to make a motion outside the jury's presence that was denied by the judge.  When the prosecutor continued this line of

---

[8]      The California Supreme Court has acknowledged that "prosecutorial 'misconduct' is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.  A more apt description of the transgression is prosecutorial error." (*People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

questioning, defense counsel again requested to make a motion outside the jury's presence. After the jury was removed from the courtroom, defense counsel asked for a mistrial based on the prosecutor's attempts to solicit hearsay testimony or testimony that lacked foundation. Defense counsel requested the judge admonish the jury to disregard the prosecutor's questions after the judge denied the request for a mistrial. The judge sustained defense counsel's objection after the jury was brought back into the courtroom.[9]

We disagree that defendant failed to object to the prosecutor's conduct at trial. Although defense counsel did not specifically use the terms "prosecutorial misconduct" during the trial, he repeatedly objected to the prosecutor's questions on the grounds of hearsay and for lack of foundation. (*People v. Jones* (2003) 29 Cal.4th 1229, 1262 [the defendant may only complain of misconduct on appeal based on the same grounds raised at trial]; *People v. Ward* (2009) 173 Cal.App.4th 1518, 1527–1528 [the defendant was not required to use the terms "prosecutorial misconduct" in front of the jury to preserve his objections on appeal].) Defense counsel requested a mistrial due to the prosecutor's questioning of Becerra in the face of repeated and sustained objections. He also requested an admonition to the jury regarding the prosecutor's questions. Defendant raises the same grounds for misconduct in this appeal. Therefore, he preserved the objections, and we will address the merits of defendant's contentions.[10]

---

[9] The judge did not actually admonish the jury to disregard the prosecutor's questions as requested by defendant. A failure to secure the requested admonition may be deemed forfeiture of the objection. (See e.g., *People v. Heldenburg* (1990) 219 Cal.App.3d 468, 474.) However, the judge in this case did sustain defendant's objection after the jury returned. He had also previously advised the jury during Becerra's direct examination that attorneys' questions are not evidence. Under these circumstances, defendant's failure to secure the specific admonition did not forfeit the claim on appeal.

[10] Defendant does not specifically challenge the trial court's denial of his mistrial motion and thus, we do not address that ruling.

*B. Analysis of Prosecutorial Misconduct*

Defendant contends that the prosecutor had represented to the court that she would not introduce evidence regarding defendant's probation status, but then attempted to do so during her questioning of Becerra. Defendant further argues that his probation status and the gun discovered in 2011 were improper propensity evidence that he was disposed to committing the charged crimes.

"Character evidence, sometimes described as evidence of propensity or disposition to engage in a specific conduct, is generally inadmissible to prove a person's conduct on a specified occasion. (Evid. Code, § 1101, subd. (a).) Evidence that a person committed a crime, civil wrong, or other act may be admitted, however, not to prove a person's predisposition to commit such an act, but rather to prove some other material fact, such as that person's intent or identity. (*Id.,* § 1101, subd. (b).)." (*People v. Harris* (2013) 57 Cal.4th 804, 841.) A statement "exposing a jury to a defendant's prior criminality presents the possibility of prejudicing a defendant's case and rendering suspect the outcome of the trial." (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1580–1581 [witness's reference to defendant's parole officer on cross-examination was improper but resulted in harmless error]; *People v. Morgan* (1978) 87 Cal.App.3d 59, 76, disapproved on other grounds in *People v. Kimble* (1988) 44 Cal.3d 480, 498 [testimony referring to defendant's parolee status was inadmissible character trait evidence, but did not constitute reversible error].)

Evidence about a defendant's probation status is improper character evidence if it is irrelevant to prove a material fact, and would lead the jury to infer the defendant was disposed to commit additional crimes. However, in this case, evidence regarding defendant's probation status was not introduced through the prosecutor's questioning of Becerra. The prosecutor referenced the "probation" department in her questions, but she did not disclose defendant's probation status by her questions. The judge advised the jury during the prosecutor's questioning of Becerra that attorneys' questions are not

evidence. This same admonition was repeated in the jury's instructions. We presume that the jury followed the trial court's instructions. (*Bennett*, *supra*, 45 Cal.4th at p. 596.) Becerra's answers to the prosecutor's questions did not volunteer defendant's probation status. It is doubtful that a reasonable juror would infer that defendant was on probation due solely to the agency's participation in the search. (See e.g., *People v. Bolden* (2002) 29 Cal.4th 515, 555 [doubtful that a reasonable jury would infer from a fleeting reference to a parole office that defendant had served a prison term for a prior conviction]; see also *People v. Franklin* (2016) 248 Cal.App.4th 938, 954–956 [reversal not required where fleeting references to defendant's criminal history including reference to a probation search of his living quarters did not unambiguously refer to his criminal history].)

The evidence regarding the firearm discovered in the park bathroom was not solicited to provide improper character evidence. The prosecutor was required to prove predicate offenses in order to prove the gang enhancement alleged on the charge of dissuading a witness. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 322 [the trier of fact must find that one of the alleged criminal street gang primary activities is the commission of one or more of certain crimes listed in the gang statute to trigger the gang enhancement]; § 186.22, subds. (e) & (f).) The firearm in the bathroom was relevant to show that possession of a firearm was a primary activity of the gang. (*People v. Tran* (2011) 51 Cal.4th 1040, 1046 [predicate offense may be established by evidence of an offense committed on a separate occasion]; Evid. Code, § 210 [evidence is relevant if it has any "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"].) Although Becerra disclosed in his testimony in front of the jury that a firearm was found in the bathroom, the judge sustained defense counsel's objection for lack of foundation and ordered the testimony stricken. The jury instructions directed the jury to ignore the question if an objection is sustained by the judge and to disregard testimony that is stricken. Such was the case here. Again, we

presume that the jury followed the trial court's instructions. (*Bennett*, *supra*, 45 Cal.4th at p. 596.)

The jury was also instructed about the limited purposes for which they could consider evidence of gang activity, which would include the firearm if it had not been stricken. Evidence of gang activity could be considered only in relation to the charge of dissuading a witness and the gang allegation for this charge. The jury instructions specified: "You may not consider this evidence for any … purpose [other than determining the truth of the gang allegation]. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime." The judge reiterated this instruction to the jury during witness testimony. We presume the jury understood and followed the limiting instruction. (*People v. Romero and Self* (2015) 62 Cal.4th 1, 28 [jury presumed to understand and follow court's limiting instruction].)

Defendant also contends that evidence regarding discovery of the gun in the bathroom was inadmissible because it lacked foundation and was based on hearsay. "Although it is misconduct for a prosecutor *intentionally* to elicit inadmissible testimony [citation], merely eliciting evidence is not misconduct." (*People v. Scott* (1997) 15 Cal.4th 1188, 1218.) The record does not support a finding that the prosecutor intentionally solicited inadmissible evidence. Her questions reflect that she was attempting to lay the foundation for the gun's discovery, albeit in a haphazard fashion. The prosecutor explained outside the jury's presence that she understood that Becerra had participated in the search and had seen the gun inside the bathroom. The judge sustained defense counsel's objection for lack of foundation regarding the gun in the bathroom and ordered it stricken before the Evidence Code section 402 hearing. During the hearing, it was clarified that Becerra did not conduct the investigation or discover the gun himself in the bathroom. The judge again sustained the objection after the jury returned to the courtroom. In sum, the prosecutor's questions were not evidence and objections were

sustained to all questions regarding defendant's possession of a firearm in 2011. As noted above, it is presumed that the jury followed the judge's instructions. (*Bennett, supra*, 45 Cal.4th at p. 596.)

Defendant claims the prejudicial impact of the prosecutor's questioning was enhanced because she repeatedly attempted to solicit inadmissible evidence after defense counsel objected. It "is not necessarily improper for an attorney to attempt to overcome prior sustained objections by asking a witness similar questions that have been reframed in an effort to meet the trial court's ruling." (*People v. Fuiava* (2012) 53 Cal.4th 622, 683.) The prosecutor did not repeat the same questions after defense counsel's objections were sustained. She tried to reframe her questions in a manner consistent with the court's rulings on those objections. We disagree that the prosecutor's questioning of Becerra rose to the level of prosecutorial misconduct.

## C. Harmless Error

Even if we concluded that the prosecutor had erred, we would find any error harmless. Under state law, a "defendant's conviction will not be reversed for prosecutorial misconduct […] unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct." (*People v. Crew, supra*, 31 Cal.4th at p. 839; *People v. Watson* (1956) 46 Cal.2d 818, 836.) "Under federal law, relief is not available if 'the challenged conduct was … harmless beyond a reasonable doubt.' " (*People v. Daveggio and Michaud, supra*, 4 Cal.5th at p. 854.) Error is harmless beyond a reasonable doubt if it did not contribute to the verdict obtained. (*Chapman v. California* (1967) 386 U.S. 18, 24.) The inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279.)

There was overwhelming and uncontroverted evidence to support a finding that defendant purposely shot a firearm at S.R.'s SUV with S.R. and Gloria T. in it.

(*Harrington v. California* (1969) 395 U.S. 250, 254 [harmless error if guilt is established by overwhelming evidence]; *People v. Houston* (2012) 54 Cal.4th 1186, 1222 [error admitting testimony was harmless where there was overwhelming evidence of defendant's guilt].) S.R. testified that defendant pulled out a gun, loaded it and shot at the SUV in response to S.R. saying, "What's up?" to defendant. (See *People v. Young* (2005) 34 Cal.4th 1149, 1181 [testimony of a single witness is sufficient to support a conviction unless the testimony is physically impossible or inherently improbable].) The shooting created a bullet hole in the SUV's rear driver's side tailgate. Defendant contends that the propensity evidence led the jury to impermissibly disregard his defense that he did not point the gun at S.R. or fire the weapon intentionally. Not so. Griffin testified that pulling back the slide loads a firearm and once this is done, the gun is equipped to shoot. Defendant's intentional act of loading the gun before shooting it at the SUV reasonably led the jury to conclude that he did not shoot the gun accidentally. (See *People v. Hernandez* (2010) 181 Cal.App.4th 1494, 1500 [section 246 is a general intent crime requiring only that the defendant intentionally did what the law declares to be a crime]; *People v. Colantuono* (1994) 7 Cal.4th 206, 213–214, superseded by statute on other grounds as recognized in *People v. Conley* (2016) 63 Cal.4th 646, 660, fn. 4 [section 245 is a general intent crime].)

Furthermore, although defendant was charged with attempted murder, assault with a firearm, shooting at an occupied motor vehicle, and dissuading a witness, he was only convicted by the jury of assault with a firearm and shooting at an occupied motor vehicle. The jury acquitted defendant on the charge of attempted murder and was unable to reach a unanimous verdict on the charge of dissuading a witness. This verdict indicates the jury based its deliberations regarding each count on the evidence admitted at trial and relevant to that count, not on improper considerations about defendant's prior criminality. The prosecutor's questioning of Becerra did not contribute to the verdict obtained; there is therefore no reasonable probability that defendant would have received a more favorable

15.

outcome absent this questioning.  Any error was harmless under either *Watson* or *Chapman*.

## DISPOSITION

The judgment is affirmed.


                                                                    FRANSON, J.

WE CONCUR:


HILL, P. J.


SMITH, J.