Filed 1/14/26  Marriage of Chalk CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of CATHY SPIER-CHALK and DANIEL CHALK. | G064812 |
| _____ | (Super. Ct. No. 21D001867) |
| CATHY SPIER-CHALK, | O P I N I O N |
| v. | |
| DANIEL CHALK, | |
| Respondent; | |
| ELIZABETH NIGRO, | |
| Objector and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Israel Claustro, Judge. Affirmed.

Elizabeth Nigro, in pro. per., for Objector and Appellant.

Elizabeth Nigro, former counsel for one of the parties in this matter, appeals from an order imposing $1,500 in sanctions against her for violating a court order. (Code Civ. Proc.,[1] § 177.5.) Finding no error, we affirm.

FACTS

In 2021, Cathy Spier-Chalk filed a petition for dissolution and a civil complaint for domestic violence against her husband, Daniel Chalk.[2] Nigro represented Cathy in both proceedings. When Cathy fell behind on paying her attorney fees, Nigro placed a family law attorney real property lien on Cathy's house in Irvine to secure payment.

The dissolution case was reassigned to the Honorable Israel Claustro in late 2022. In February 2023, when Nigro failed to appear at the trial setting conference, Judge Claustro ordered her to pay $995 in sanctions.

The dissolution case went to trial in August 2023, and the family court issued a minute order dividing most of the marital assets and debts. However, the court declared a mistrial on the Irvine house due to a lack of evidence and set the matter for trial in 2024.

Days later, Nigro filed a statement of disqualification against Judge Claustro under section 170.3, citing his February sanctions order against her and his failure to admonish or sanction Daniel's counsel for alleged misconduct before and during trial. In response, Judge Claustro issued an order striking the statement of disqualification, or in the alternative, a verified answer. In striking the statement, the court reasoned

---

[1] All undesignated statutory references are to this code.

[2] We respectfully use the parties' first names for clarity.

it was untimely and failed to state grounds for disqualification. (See § 170.4, subd. (b).) Nigro did not seek writ review of the order. (See § 170.3, subd. (d).)

At a mandatory settlement conference in the civil case that fall, the parties negotiated a global settlement of both matters and documented their agreement in a signed memorandum of understanding. The MOU noted that the Irvine house was Cathy's separate property, Daniel waived any interest in it, and the 2024 trial date would be vacated.

The MOU also recited that a judgment of dissolution would be entered in the family law case and would "not incorporate Judge Claustro's tentative orders." In the months that followed, however, no judgment was entered in that matter.

Meanwhile, Cathy listed the house for sale and entered escrow. When Daniel learned about it, he applied ex parte to stop the sale. The family court denied his application in December 2023 but ordered that if "the home is sold by [Cathy], funds [must be] held in trust pending orders of the family court, which has jurisdiction of this asset." The court also issued an order to show cause concerning judgment and set a hearing in January 2024.

Following that order, Cathy expressed concern to Nigro about going forward with the sale; she noted it would be "too risky" to close without a court order confirming Daniel had no claim to the property and she did not want the sale proceeds to be held in trust. In response, Nigro advised Cathy "it is possible Judge Claustro did not even have jurisdiction to make that

3

order regarding your house" given "the issue of his disqualification," which Nigro advised was "a big issue for appeal or writ."[3]

Nigro also reminded Cathy that she owed "tens of thousands of dollars" in attorney fees. She therefore suggested that Cathy lease back the property and "have the money withheld by escrow [for 30 to 60 days] so it doesn't have to go into my trust account in the event we have to wait for the [January 2024] hearing before Judge Claustro." The next day, Cathy confirmed she would go through with the sale, the proceeds would go directly to Cathy's account (and "not go into a Trust Account as we discussed"), Nigro would be paid directly by Cathy or escrow, and Nigro did not "have to worry" about being paid.

When the sale closed, the proceeds were distributed to Nigro (who received about $54,000) and Cathy (who received the remainder). None of the proceeds were held in trust.

After learning about the sale, Daniel's counsel sent Nigro a demand for an accounting and filed a request for attorney fees, costs, and sanctions against her and Cathy. Around that same time, Cathy grew concerned about how Nigro was handling the matter and sought a second opinion from a different lawyer. She hired that attorney, discharged Nigro, and placed her portion of the sale proceeds into her new counsel's trust account.

That spring, Daniel's counsel filed a supplemental declaration in support of his request for attorney fees, costs, and sanctions against Nigro

---

[3] We cannot find this particular e-mail in the record, but it is quoted in the family court's August 2024 minute order and was apparently admitted as Exhibit 2-2. We remind Nigro of her duty to provide a complete record on appeal.

and Cathy, seeking roughly $45,000 based on Nigro's "improper conduct" under section 177.5, section 128.5, and Family Code section 271. Days later, Daniel and Cathy entered into a stipulation on the amount to be paid by Cathy personally.

At the May 2024 hearing on the sanctions request against Nigro, Cathy testified that Nigro pushed her to sell her house and told her she did not need to put the proceeds into a trust account because Judge Claustro would be disqualified and had no jurisdiction over the case.[4] Nigro testified she was aware of the family court's December 2023 order, but the court did not specify which trust account any sale proceeds should be placed in. Nigro also admitted escrow paid her lien on the property after the sale closed and she did not hold those funds in trust.

After excusing Nigro subject to recall, the family court continued the hearing and ordered Nigro to return so she could be heard. The court then held two additional hearings in June and August, during which Nigro presented evidence and testified further.

After considering the evidence, the family court ordered Nigro to pay $1,500 in sanctions under section 177.5.[5] Explaining its ruling in a five-page minute order, the court found Cathy's testimony was "credible and

---

[4] Nigro maintains the family court wrongfully excluded her from this portion of the hearing, but the reporter's transcript of Cathy's testimony shows no such order. Notably, after Nigro testified that same day, the court excused her subject to recall but told her she was "free to remain in the courtroom"; she evidently did not stay. After brief testimony from Daniel, the courtroom deputy checked if Nigro was still outside the courtroom, but she had already left.

[5] The family court declined to award sanctions under section 128.5 or Family Code section 271.

compelling" and that Nigro "intentionally violated" its December 2023 order to hold all sale proceeds in trust. Though not confirmed by the record, we accept Nigro's representation that the court subsequently reported the sanctions order to the State Bar of California. (See Bus. & Prof. Code, §§ 6068, subd. (o)(3), 6086.7, subd. (a)(3); Cal. Rules of Court, rule 10.609(a).)

DISCUSSION

Section 177.5 permits a trial court to "impose reasonable money sanctions" against any person—including a witness, a party, or a party's attorney—in an amount up to $1,500, payable to the court, "for any violation of a lawful court order . . . done without good cause or substantial justification." We review an order imposing sanctions under this section for abuse of discretion. (*People v. Ward* (2009) 173 Cal.App.4th 1518, 1527 (*Ward*).)

Applying that deferential standard here, we discern no error in the sanctions award. The family court's December 2023 order specified that if Cathy sold the house, the "funds [must be] held in trust pending orders of the family court, which has jurisdiction of this asset." The record reflects Nigro was aware of the order but nevertheless told Cathy the court might "not even have jurisdiction to make that order." When Cathy said she did not want to go forward with selling the house if the proceeds would be held in trust, Nigro encouraged her to close and have escrow withhold the funds so the money would not go into a trust account. After closing, the proceeds were distributed to Nigro and Cathy directly and were not held in Nigro's trust account as ordered.

6

This was a patent violation of a lawful court order by a party's (then) attorney[6] without good cause or substantial justification. The parties' previous agreement in their October MOU that the judgment to be entered in the dissolution case would not incorporate Judge Claustro's "tentative orders" had no effect on the validity of the court's subsequent non-tentative December order requiring any sale proceeds to be held in trust.

Noting that a court's sanctions power does "not apply to advocacy of counsel before the court" (§ 177.5), Nigro contends she was wrongly sanctioned for advocating that the court lacked jurisdiction to order the funds held in trust. We disagree. To begin with, Nigro had no colorable basis for suggesting the family court lacked jurisdiction due to the statement of disqualification. "[T]he trial judge against whom" a statement is filed "may order it stricken" "if on its face it discloses no legal ground for disqualification" (§ 170.4, subd. (b)), which is what Judge Claustro did here. And Nigro's client failed to file a timely writ petition challenging the order striking the statement. (See § 170.3, subd. (d); *Dumas v. Los Angeles County Bd. of Supervisors* (2020) 45 Cal.App.5th 348, 354.)

Further, there is a distinction between advocacy, which has been defined as "the act of pleading, arguing, supporting or recommending a particular position or idea," and conduct subject to sanctions under section 177.5. (*Ward, supra,* 173 Cal.App.4th at pp. 1529–1530.) When engaging in

---

[6] The fact that Cathy had terminated Nigro by the time of the sanctions hearings and order is of no consequence. Nigro was still Cathy's attorney of record when the family court ordered that any sale proceeds be held in trust and when the sale closed. And in any event, section 177.5 permits a court to impose reasonable monetary sanctions against *anyone* who violates a lawful court order without good cause or substantial justification— not just current counsel of record.

advocacy, counsel is free to present arguments and make recommendations on a given issue; however, once the court rules on those arguments and issues its order, violating that court order is not "advocacy." (*Id.* at p. 1530; see *Scott C. Moody, Inc. v. Staar Surgical Co.* (2011) 195 Cal.App.4th 1043, 1049 [asking witness about certain topic in violation of court order was not "advocacy" but rather "a calculated decision to violate the court's order"].)

In this case, Nigro was sanctioned not because she tried unsuccessfully to disqualify the judge in August 2023 or because she questioned his jurisdiction in December 2023, but because she accepted payment of funds that the family court had ordered to be held in trust. That was not advocacy before the court; it was disregard for a lawful court order.

Nigro contends the family court violated her due process rights by excluding her from part of the May 2024 hearing and by limiting her use of redacted e-mails as impeachment evidence. We are not persuaded. The statute itself requires only "notice and opportunity to be heard." (§ 177.5.) That is, there must be "'notice that such sanctions are being considered, notice as to what act or omission of the individual is the basis for the proposed sanctions, and an objective hearing at which the person is permitted to address the lawfulness of the order, the existence of the violation, and the absence of good cause or substantial justification for the violation.'" (*People v. Hundal* (2008) 168 Cal.App.4th 965, 970.) Beyond that, "'the scope of a hearing on an application for sanctions is within the trial court's discretion.'" (*Seykora v. Superior Court* (1991) 232 Cal.App.3d 1075, 1082, italics omitted [sanctioned party does not have absolute right to call witnesses or present oral testimony].) In this case, where the sanctions proceedings stretched across multiple hearings—with ample notice to, argument, and testimony by Nigro—we discern no due process violation.

8

## DISPOSITION

The order is affirmed. The clerk of this court is ordered to send a copy of this opinion to the State Bar of California. (Bus. & Prof. Code, § 6086.7, subd. (a)(3); Cal. Rules of Court, rule 10.1017(a).)


SCOTT, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.